UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID WEBB,

Plaintiff,

v. Case No: 2:14-cv-666-FtM-MRM

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_________________________________/

**OPINION AND ORDER**

This cause is before the Court on Plaintiff David Webb's Complaint (Doc. 1) filed on November 13, 2014. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits.[1] The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **affirmed** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

**A. Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

[1] The Court notes that an Application for Supplemental Security Income dated December 3, 2012 was included in the Transcript, but the parties and the ALJ did not mention that Plaintiff had applied for Supplemental Security Income. (Tr. at 142-151).

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382d(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382d(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**B. Procedural History**

On August 8, 2012, Plaintiff filed an application for disability insurance benefits asserting an onset date of October 29, 2011. (Tr. at 81, 96, 154-160). Plaintiff's application was denied initially on February 6, 2013, and on reconsideration on June 17, 2013. (Tr. at 81, 96). A hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on December 4, 2013. (Tr. at 27-70). The ALJ issued an unfavorable decision on June 20, 2014. (Tr. at 13-21). The ALJ found Plaintiff not to be under a disability from October 29, 2011, through the date of the decision. (Tr. at 21).

On October 3, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on November 13, 2014. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 12).

**C. Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2016. (Tr. at 15). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 29, 2011, the alleged onset date. (Tr. at 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: prostate malignancy, status-post prostatectomy and radiation; and effective disorder. (Tr. at 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 17). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to:

> lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for six hours in an eight hour workday; frequent (2/3 of day) climbing ramps and stairs; frequent crouching; no limitation on balancing, stooping, kneeling, crawling; never climb ladders/ropes/scaffolds; occasional (1/3 day) exposure to extreme cold/heat;

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

> no limitation on wet conditions; occasional exposure to humidity; no limitation on exposure to noises, vibrations, moving mechanical parts; occasional atmospheric conditions, odors, fumes, dust, gases and working in high exposed areas should be avoided.

(Tr. at 17). The ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. at 19). After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including the following:

1) Packager, DOT #920.587-018, sedentary/light, SVP 2;
2) Electronic Assembler, DOT #726.684-018, light, SVP 2;
3) General Office Clerk, DOT #209.672-010, light SVP 2; and
4) Cashier, DOT #211.462-010, light, SVP 2.[3]

The ALJ concluded that Plaintiff was not under a disability from October 29, 2011, through the date of the decision. (Tr. at 21).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

[3] The "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code found in the *Dictionary of Occupational Titles*.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three issues. As stated by Plaintiff, they are:

1) The Commissioner's decision fails to acknowledge that Plaintiff's prostate cancer recurred, and the record does not contain a legally required physician opinion as to whether Webb's prostate cancer medically equals Listing 13.24. The record contains evidence suggesting that Plaintiff's condition medically equals Listing 13.24, which renders Plaintiff disabled.

2) The ALJ failed to consider evidence that Plaintiff's cancer treatments resulted in urinary problems and the frequent need to use the bathroom, a limitation that a vocational expert testified precluded work, which renders Plaintiff disabled.

3) The ALJ failed to consider evidence of hand tremors that limit Plaintiff's ability to use his hands, a limitation that a vocational expert testified precluded work, which renders Plaintiff disabled.

The Court addresses each issue in turn.

### A. Listing 13.24

Plaintiff argues that the ALJ's decision ignores the fact that Plaintiff was diagnosed with prostate cancer, had his prostate removed, had radiation therapy, his cancer recurred, and as a

result, had hormone therapy.  Plaintiff claims that the record fails to contain a physician's opinion as to whether Plaintiff's prostate cancer met or medically equaled Listing 13.24.  Additionally, Plaintiff argues that the ALJ erred in failing to determine that Plaintiff met or medically equaled Listing 13.24.  The Commissioner responds that Plaintiff does not meet Listing 13.24.  Further, the record contains the opinion of Debra Troiano, M.D., a medical consultant, who considered whether Plaintiff's condition met or medically equaled Listing 13.24, and determined Plaintiff's condition did not meet the Listing.

At step three, to meet the requirements of a listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. § 404.1525(d).  The Listings of Impairments in the Social Security Regulations identified impairments that are considered severe enough to prevent a person from engaging in gainful activity.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If a plaintiff can meet a listed impairment or otherwise establish an equivalence, then a plaintiff is presumptively determined to be disabled, and the ALJ's sequential evaluation of a claim ends.  *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984).  The burden is on Plaintiff to show that he meets the Listings.  *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).  If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)).  "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the

impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id*. (citing 20 C.F.R. § 404.1526(a)).

Listing 13.00(H)(2) provides that when a Listing within the 1300 Listings does not contain a specification as to a date that an impairment is disabling, then the Commissioner will consider an impairment that "meets or medically equals a listing to be disabling until at least 3 years after onset of complete remission. When the impairment(s) has been in complete remission for at least 3 years, that is, the original tumor or a recurrence (or relapse) and any metastases have not been evident for at least 3 years, the impairment(s) will no longer meet or medically equal the criteria of a listing in this body." 20 C.F.R. 404, Subpt. P, Appendix 1 § 1300(H)(2).

Listing 13.24 for prostate gland carcinoma requires:

> A. Progressive or recurrent (not including biochemical recurrence) despite initial hormonal intervention. (See 13.00K8)
>
> OR
>
> B. With visceral metastases (metastases to internal organs).
>
> OR
>
> C. Small-cell (oat cell) carcinoma.

20 C.F.R. Part 404, Subpt. P, Appendix 1 § 13.24.

Plaintiff argues that his prostate cancer meets or equals Listing 13.24, section A, by being recurrent despite initial hormonal intervention. He claims that initially he went through more invasive treatment by having a radical prostatectomy and radiation. Then later, when his PSA levels failed to decrease, Plaintiff underwent hormonal therapy.

Plaintiff underwent a radical prostatectomy on September 23, 2011. (Tr. at 277). On November 30, 2011, Plaintiff visited James H. Rubenstein, M.D. who noted that Plaintiff's PSA

level did not revert to 0 after surgery. (Tr. at 287). Further, Dr. Rubenstein noted that Plaintiff's tumor was extensive and "microscopically, there were involved margins at the left bladder neck margin, the left urethral margin, and the left anterior/left posterior quadrant margins." (Tr. at 287). Dr. Rubenstein recommended radiation therapy for the positive margins and the failure of Plaintiff's PSA to revert to 0. (Tr. at 287). Plaintiff began radiation treatment on December 5, 2011 and completed it on February 1, 2012. (Tr. at 284). Due to Plaintiff's rising PSA, on April 23, 2013, Steven A. Harrison, M.D. determined that Plaintiff would likely need hormonal therapy. (Tr. at 680-83). Plaintiff began hormonal treatment, Eligard, on June 12, 2013. (Tr. at 671-673). On September 26, 2013, after beginning hormone therapy, Plaintiff's PSA was down to 0.21. (Tr. at 668).

Plaintiff has the burden of proving that his medical condition meets or equals one of the Listings. *Wilkinson*, 847 F.2d at 662. Plaintiff argues that he underwent more radical treatment than initial hormonal intervention by having his prostate removed, going through radiation, and then having hormonal therapy. Plaintiff claims that his PSA should be 0 after his prostatectomy, but even after radiation and hormonal therapy, his PSA was 0.21, which proves that his prostate cancer is recurring. Plaintiff cites to no evidence in the record to support this claim.

To meet Listing 13.24, Plaintiff must show that his prostate cancer was progressive or recurrent despite initial hormonal therapy. Although Plaintiff may be correct concerning his condition, Plaintiff fails to cite to a medical professional in the record that found Plaintiff's prostate cancer recurrent despite initial hormonal therapy, or that his prostate cancer is recurrent as evidenced by his PSA being 0.21. The Court notes that Dr. Harrison discussed hormonal therapy with Plaintiff, and that the cancer may become resistant to it. However, after the

hormonal therapy began, Plaintiff failed to provide medical evidence that a physician found Plaintiff's prostate cancer to be recurring.

The only medical evidence of record that the parties cited or that the Court could find showing a physician actually considering whether Plaintiff's condition met or medically equaled Listing 13.24 was the report of Debra Troiano, M.D., a non-examining consultative examiner. (Tr. at 91-3). Dr. Troiano completed her report on June 17, 2013, shortly after Plaintiff's hormone therapy began. Dr. Troiano considered the requirements to meet or equal Listing 13.24 for prostate cancer due to Plaintiff's elevated PSA levels, but noted that to meet or equal the listing, the progression or recurrence of the cancer must occur despite initial hormonal therapy. (Tr. at 93). Dr. Troiano noted that Plaintiff had just begun hormonal therapy, and Dr. Troiano found no definitive recurrence was noted. (Tr. at 93). Although Plaintiff argues that Dr. Troiano did not consider whether Plaintiff's condition equaled Listing 13.24, this statement is contrary to Dr. Troiano's report which specifically considered whether Plaintiff's condition met or medically equaled Listing 13.24.

Thus, Plaintiff's argument that the ALJ erred in failing to determine whether Plaintiff met or medically equaled Listing 13.24 prior to remission fails because Plaintiff fails to provide support in the record from a medical professional for this proposition. Moreover, the ALJ could rely on the uncontroverted opinion of Dr. Troiano.

Further, Plaintiff argues that the burden was on the Commissioner at both the ALJ and Appeals Council levels to obtain updated medical information if Dr. Troiano could not determine if Plaintiff's prostate cancer was recurrent after hormonal therapy. Even though the ALJ has a basic duty to develop a full and fair record, the burden is on Plaintiff to show that he met or medically equaled a listing. *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir.

2015). Plaintiff failed to provide any medical records from a physician who opined that Plaintiff's prostate cancer was recurrent despite the initial hormonal therapy.[4] Dr. Troiano's report was completed on June 17, 2013. The ALJ's decision was entered on June 20, 2014, a year after Dr. Troiano's report. Even though a year had passed, Plaintiff failed to cite to any medical records that Plaintiff's prostate cancer was recurrent despite the hormonal intervention that began in June 2013.

The Court finds that Plaintiff did not meet his burden of showing that his condition met or medically equaled Listing 13.24. Thus, the ALJ did not err in determining that Plaintiff's condition did not meet or equal Listing 13.24. Further, neither the ALJ nor the Appeals Council erred in failing to obtain additional medical evidence when the record contained sufficient evidence for the ALJ and the Appeals Council to render a decision as to whether Plaintiff's condition met or medically equaled a listing, and it is Plaintiff's burden to obtain medical evidence that despite hormonal therapy, Plaintiff's prostate cancer was recurrent. The Court finds that the decisions of the ALJ and the Appeals Council were supported by substantial evidence.

**B. RFC regarding urinary condition**

Plaintiff argues that the record establishes that he suffers from urinary urgency, urinary frequency, and incontinence as a result of his cancer treatments. Plaintiff argues that the ALJ only mentioned Plaintiff's dysuria (painful or difficult urination), issues with a small urine

[4] Plaintiff filed a Reply (Doc. 18) on May 15, 2015. In that Reply, Plaintiff raises arguments for the first time concerning the Appeals Council's failure to obtain an updated medical opinion citing SSR 96-6P. The purpose for the Court allowing Plaintiff to file a Reply was to allow Plaintiff an opportunity to respond to arguments raised by the Commissioner in his Memorandum of Law, not raise new arguments. Nevertheless, the Court has considered these additional arguments in it Opinion and Order.

stream, and a resolved urinary tract infection. Plaintiff claims that the ALJ erred in failing to consider Plaintiff's urinary urgency, urinary frequency, and incontinence in combination with Plaintiff's other limitations in determining Plaintiff's RFC. Additionally, Plaintiff claims that the vocational expert testified that if Plaintiff required frequent restroom breaks, he would not be able to work. The Commissioner responds that the ALJ cited to most of the Exhibits containing the information concerning urinary urgency, urinary frequency, and incontinence. The Commissioner contends that Plaintiff's oncologist stated Plaintiff was able to work. Plus, some of his medical records fail to contain references to urinary problems. Lastly, the Commissioner argues that the ALJ did not accept the limitations Plaintiff claimed concerning urinary issues and, thus, the ALJ did not accept Plaintiff's counsel's hypothetical to the vocational expert that contained the limitation of requiring a ten-minute bathroom break every hour or two five-minute breaks every hour. Plaintiff responds that it is not sufficient for the ALJ to have reviewed these medical records, but rather, he should have considered the facts within these records that are contrary to his decisions. Further, Plaintiff claims that the ALJ failed to consider evidence other than medical evidence in making his determination that Plaintiff did not require frequent bathroom breaks.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637

(11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [he] is disabled, and consequently, [he] is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ mentioned that Plaintiff testified at the hearing that he had incontinence resulting from his prostate surgery. (Tr. at 18). Further, the ALJ mentioned that Plaintiff testified that he did not socialize with friends partly due to his embarrassment regarding his incontinence. (Tr. at 17, 18). The ALJ did cite to most of the records containing Plaintiff's complaints regarding his urinary problems, showing that the ALJ considered these records. (Tr. at 18). Plaintiff mentioned he had urinary frequency, and urgency on October 18, 2011 and February 14, 2012; he had mild leakage on February 28, 2012; he complained of urgency, dysuria, and diminished stream on March 13, 2012; he had a weak stream, burning with urination, but no urinary loss of control, no urinary urgency, no change in urinary frequency, and no urinary hesitancy on April 24, 2012. (Tr. at 279, 282, 295, and 301). On June 6, 2013, a medical provider found that Plaintiff was able physically to work, particularly if he started the hormone therapy. (Tr. at 674). Further, some of the medical records include reports from Plaintiff that he had no voiding problems. (Tr. at 666-68).

In the decision, the ALJ stated that he carefully considered the entire record. (Tr. at 17). He then cited to his review of the medical records of Plaintiff, which included those records mentioning Plaintiff's reports of urinary problems as well as those records that did not indicate urinary issues. The medical records did not indicate that Plaintiff was limited to using the restroom for ten minutes per hour or twice for five minutes each hour. The ALJ did not find that Plaintiff was as limited as Plaintiff alleges regarding his urinary problems and, thus, did not include the ten-minute break per hour or two five-minute breaks in his hypothetical. An ALJ is

only required to ask hypothetical questions that pose the limitations he found severe. *Nation v. Barnhart*, 153 F. App'x 597, 599 (11th Cir. 2005). In this case, the ALJ considered the medical records and other evidence in the record, and did not find that Plaintiff's urinary conditions required limitations in Plaintiff's RFC. Therefore, the ALJ did not include any urinary condition limitations in his hypothetical to the vocational expert, and this determination is supported by substantial evidence. The Court finds that the ALJ did not err in failing to include limitations regarding Plaintiff's urinary condition in the hypothetical to the vocational expert or in Plaintiff's RFC.

**C. RFC relating to hand tremors**

Plaintiff argues that the ALJ only mentioned briefly Plaintiff's testimony regarding his hand tremors, and failed to include any limitations as to hand tremors in Plaintiff's RFC. Plaintiff claims that he had complained of hand tremors in the medical records as well as testifying to hand tremors at the hearing. Plaintiff contends that the vocational expert testified that if Plaintiff had only occasional use of his dominant right hand, then he would not be able to perform the jobs the vocational expert identified that Plaintiff was able to perform. The Commissioner responds that even though the medical records contain complaints by Plaintiff as to hand tremors, there was no evidence of any functional limitations.

The law concerning an RFC finding is stated above and applies equally to this issue. The ALJ mentioned that Plaintiff complained of tremors in both hands. (Tr. at 18). As Plaintiff contends, it is uncontested that Plaintiff reported hand tremors in the records. For example, on January 15, 2013, Plaintiff complained of hand tremors, his examination was positive for tremors in both arms with it being worse on the left, and he was diagnosed with hand tremors. (Tr. at 578-80). On February 15, 2013, an examination noted hand tremors. (Tr. at 572). In contrast,

the Commissioner refers to Plaintiff's January 15, 2013 exam that found Plaintiff's reflexes to be normal. (Tr. at 579). At that same examination, it was suggested that Plaintiff would benefit from a neurological examination, but he did not have funds for that, so it was suggested that medication may resolve the issue after his current medications were settled. (Tr. at 580). The Commissioner also cites to the February 15, 2013 exam when hand tremors were noted, but no treatment was prescribed. (Tr. at 572-73). The Commissioner references Plaintiff's March 15, 2013 exam, which found that Plaintiff was positive for tremors on a review of systems, but on examination his reflexes, muscle tone, and coordination were normal. (Tr. at 566).

     The ALJ noted that Plaintiff complained of tremors in his hands. (Tr. at 18). The medical records from January to March 2013 contain complaints by Plaintiff of hand tremors. (Tr. at 566, 572, 578-80). However, these records also indicate that Plaintiff's reflexes, muscle tone, and coordination were normal, and no treatment was prescribed. (Tr. at 566, 572, 578-80). Dr. Troiano noted Plaintiff's hand tremors, but also noted that Plaintiff's neurological examinations were normal with normal strength, sensation, and coordination. (Tr. at 93). Plaintiff fails to cite to any records, other than Plaintiff's subjective complaints, to show that these hand tremors caused any limitation as to Plaintiff's functioning, or more specifically, that Plaintiff could only use his dominant right hand occasionally, as Plaintiff claims. Additionally, Plaintiff failed to cite to any treatment prescribed for these hand tremors. The ALJ did not find that Plaintiff had limitations in the use of his hands, and provided a hypothetical to the vocational expert that did not contain limitations as to Plaintiff's hands. This determination is supported by substantial evidence. The ALJ did not err in failing to include limitations as to Plaintiff's ability to use his hands in Plaintiff's RFC, and did not err in failing to include limitations as to Plaintiff's hands in the hypothetical presented to the vocational expert.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 2, 2016.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties